1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

MARCY C., pseudonmously,

Case No.2:24-CV-2027  JCM (MDC)

8

Plaintiff(s),

9

v.

ORDER

10

MGM RESORTS INTERNATIONAL, et al.,

11

Defendant(s).

12
13

Presently before the court are motions to dismiss from defendants Wynn Las Vegas, LLC

14

(ECF No. 148), Treasure Island LV, LLC (ECF No. 149), Parball Newco., LLC, Rio Properties,

15

LLC, PHWLV, LLC (ECF No. 150), Venetian Las Vegas Gaming, LLC (ECF No. 151), MGM

16

Resorts International, The Mirage Casino-Hotel LLC, and New Castle, LLC (ECF No. 152)

17

(collectively "defendants" or "defendant casinos").  Plaintiff McKenzie Keller filed a response,

18

(ECF No. 154) to which defendants replied (ECF Nos. 161–165).

19
20

The court has sufficient information to decide the instant motion based on the filings and

21

thus denies any request for oral argument.  *See* LR 78-1.

22

**I.    Background**

23
24

This case arises from sex trafficking allegations.  Plaintiff filed an amended complaint

25

against defendant casinos alleging that they are perpetrators and beneficiaries of sex trafficking as

26

defined in 18 U.S.C. § 1595(a).  (ECF No. 138).

27

Plaintiff states that she was trafficked by her partner, Delquan Danford, for nearly four

28

years, beginning in 2012, through early 2016.  (*Id.* ¶¶ 101–09).  Plaintiff states that Danford forced

her to walk casino floors and engage in sex work in Utah, Colorado, and Nevada, though most of her activity occurred in Las Vegas. (*Id.* ¶¶ 101–02). During this time, Danford physically, mentally, and emotionally abused her. (*Id.* ¶¶ 93–106). After leaving Danford in 2016, plaintiff sought assistance from law enforcement. (*Id.* ¶¶ 111–12). Danford is now in Utah serving a sentence of up to 20 years for aggravated assault and human trafficking. (*Id.* ¶ 112).

Plaintiff brought this action against the defendant casinos alleging that they played a role in her trafficking. Particularly, she claims that the defendants have made a concerted effort to incentivize and further sex trafficking to reap benefits of sex-tourism. (*Id.* ¶¶ 58, 64, 65). Plaintiff further alleges that the defendants shield patrons of sex trafficking and arbitrarily enforce anti-sex-work policies against the women-victims. (*See id.* ¶¶ 66, 67).

Moreover, plaintiff alleges that defendant casinos were aware of the ongoing sex trafficking occurring on their premises through the use of facial-recognition and other surveillance software yet turned a blind eye to the known "flags" indicating plaintiff's trafficking. (*See id.* ¶¶ 151–64).

## II. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to

1  "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

2  In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply
3  when considering motions to dismiss. First, the court must accept as true all well-pled factual
4  allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.
5  *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory
6  statements, do not suffice. *Id.* at 678.

7  Second, the court must consider whether the factual allegations in the complaint allege a
8  plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint
9  alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the
10  alleged misconduct. *Id.* at 678.

11  Where the complaint does not permit the court to infer more than the mere possibility of
12  misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.*
13  (internal quotation marks omitted). When the allegations in a complaint have not crossed the line
14  from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570. The
15  Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th
16  Cir. 2011). The *Starr* court stated, in relevant part

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless
the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d
655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when

justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

**III.    Discussion**

As a threshold matter, plaintiff plausibly alleges that she is a victim of sex trafficking under 18 U.S.C. § 1591(a).  A victim is sex trafficked if they engaged in commercial sex acts either while under 18 years of age or due to force, threat of force, fraud, or coercion.  18 U.S.C. § 1591(a). Plaintiff plausibly alleges that her trafficker used force, threats of force, and coercion to make her engage in commercial sex acts.  (ECF No. 138 ¶¶ 87–109).  Thus, she is a "victim" with standing to sue under the Trafficking Victims Prevention and Protection Reauthorization Act ("TVPRA").

A.  Statute of Limitations

Defendant Wynn Las Vegas, LLC argues that plaintiff's TVPRA claim is barred as to conduct before October 3, 2014.

A claim may be dismissed as untimely pursuant to a 12(b)(6) motion when the running of the statute of limitations is apparent on the face of the complaint.  *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013).  Accordingly, courts may dismiss "only if assertions of complaint, read with required liberality, would not permit plaintiff to prove that the statute was tolled."  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir. 1995) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).

The TVPRA requires all claims to be brought within ten years after the cause of action arose or the victim reaches eighteen years of age, whichever is later.  18 U.S.C. § 1595(c)(1).

1   Plaintiff filed suit on October 3, 2024, alleging that her trafficking began in 2012 and continued

2   until 2016.  (*See* ECF No. 138 ¶¶ 101, 109).  On the complaint's face, this would limit any liability

3   to events occurring between October 3, 2014, and October 3, 2024.

4

5        Plaintiff argues that equitable tolling applies to her statute of limitations problem.  Federal

6   statutes of limitations are presumptively entitled to equitable tolling as long as the plaintiff can

7   prove (1) she has been pursuing her rights diligently, and (2) that extraordinary circumstances

8   prevent untimely filing.  *See Arellano v. McDonough*, 598 U.S. 1 (2023); *Menominee Indian Tribe*

9   *of Wis. v. United States*, 577 U.S. 250, 255 (2016).  Plaintiff argues that the defendants are "in

10  some way responsible" for her tardy filing, yet she provides no factual support for this allegation

11  in her complaint.  (ECF No. 153 at 25).  With the burden of alleging such facts resting on plaintiff's

12  shoulders, the court find that plaintiff is not entitled to equitable tolling.  *See Hinton v. Pac. Enters.*,

13  5 F.3d 391, 395 (9th Cir. 1993).

14

15       Plaintiff also maintains that the "continuing tort" or the "continuing violation" doctrine –

16  normally applied in the context of Title VII employment violation cases—applies.   "The

17  continuing violations doctrine functions as an exception to the discovery rule of accrual allowing

18  a plaintiff to seek relief for events outside of the limitations period." *Bird v. Dep't of Hum. Servs.*,

19  935 F.3d 738, 746 (9th Cir. 2019) (internal quotations and citation omitted).  The Ninth Circuit

20  has recognized two applications of the continuing violations doctrine: "first, to 'a series of related

21  acts, one or more of which falls within the limitations period,' and second, to 'the maintenance of

22  a discriminatory system both before and during [the limitations] period." *Id.* (quoting *Gutowsky*

23  *v. Cnty. of Placer*, 108 F.3d 256, 259 (9th Cir. 1997).

24

25       The Supreme Court limited the continuing violations doctrine in *Nat'l R.R. Passsenger*

26  *Corp. v. Morgan*, 536 U.S. 101 (2002), to its current state where "little remains of the continuing

27

28

- 5 -

1    violations doctrine" outside of specific employment-discrimination issues.  *Bird*, 935 F.3d at 748.

2         Thus, since the continuing violations doctrine is not applicable to the facts of this case, it

3    cannot remedy the issues regarding the statute of limitations.[1]  Accordingly, plaintiff's TVPRA

4    claim is barred as to conduct before October 3, 2014.

5         B.  Beneficiary Liability

6         To bring a beneficiary claim under § 1595(a), plaintiff must allege that the defendants (1)

7    knowingly benefitted (2) from participation in a venture (3) that they knew or should have known

8    has engaged in trafficking her.  18 U.S.C. § 1595(a).  *See J.M. v. Choice Hotels Int'l, Inc.*, No.

9    2:22-cv-00672-KJM-JDP, 2023 U.S. Dist. LEXIS 84861, 2023 WL 3456619, at *3 (E.D. Cal. May

10   12, 2023).

11        *1.  Knowingly Benefit*

12        The first question is whether plaintiff has plausibly alleged that defendants knowingly

13   benefitted pursuant to § 1595:

> According to the language of Section 1595, a plaintiff can allege that the defendant "knowingly benefitted" by alleging only that the defendant was ***aware*** that it was benefitting in some way from its participation in the venture. . .the benefit need not take the form of "profits" that are "the specific result" of a sex-trafficking venture.

*G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 564 (7th Cir. 2023) (emphasis added).

        The court must draw all reasonable inferences in favor of the plaintiff at the dismissal stage.

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1116 (9th

Cir. 2020).  However, plaintiff fails to plead sufficient facts supporting the conclusion that

defendants were aware (or should have been aware) that they were benefitting from her sex

---

[1] The court acknowledges that some Ninth Circuit courts have applied this doctrine even after the *Bird* decision, though many of them do not address its relevance.  *See Doe v. G6 Hosp.*, LLC, No. 2:24-cv-01235-RSL, 2025 U.S. Dist. LEXIS 76546, at *12–13, (W.D. Wash. Apr. 22, 2025) ("That the unlawful conduct is repeated does not stall the running of the limitations period or make all subsequent trafficking episodes part of a single illegal act. Each discrete, actional act starts a new clock for filing a lawsuit alleg[ing] that act.").

1    trafficking.

2        Plaintiff argues that defendants "turned a blind eye" to her trafficking in order to please

3    clientele and pad their bottom lines.  (ECF No. 138 ¶¶ 159, 160, 211).  This court has previously

4    found allegations that "defendants benefitted from [plaintiff's] trafficking because she drove foot

5    traffic to the casinos, leading to increased room and gaming revenues" sufficient to satisfy this

6    prong of a beneficiary liability claim.  *Catelyn H. v. G6 Hosp.*, LLC No. 24-cv-00939, 2025 WL

7    929032, 2025 U.S. Dist. LEXIS 57162, at *9 (D. Nev. Mar. 26, 2025).  In this case there is no

8    allegation that plaintiff's presence in the defendant casinos resulted in increased revenue that

9    casinos would not have expected from the average guest.[2]

10

11

12        Accordingly, plaintiff fails to allege well-pled facts supporting a conclusion that any of the

13    defendants knowingly benefitted from her sex trafficking.

14            *2.  Participation in a Venture*

15        Participation in a venture is "an undertaking or enterprise involving risk and potential

16    profit."  *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021).  A venture under § 1595

17    can be an isolated act of sex trafficking but can also be a business whose primary focus is not on

18

19    sex trafficking.  *G.G.*, 76 F.4th at 554.

20        Plaintiff alleges that the defendants participated in (1) the commercial venture of operating

21    their respective casinos; and (2) the "venture[s] of their sex tourist guests' Las Vegas vacations."

22

23    (ECF No. 138 ¶¶ 212–13).

24        The defendants are all casino and hotel operators.  As this court has previously noted,

25    "operating a casino is a commercial venture."  *Christina T. v. Bellagio LLC*, No. 2:25-cv-145 JCM

26    (DJA), 2025 U.S. Dist. LEXIS 205896, at *9–10 (D. Nev. Oct. 17, 2025).  It is "reasonable to infer

27

28    _____
[2] Plaintiff claims she tipped bartenders and staff Planet Hollywood, the Mirage, Treasure Island, and Wynn, but this benefitted the employees, not the defendant casinos.  (ECF No. 138 ¶¶ 135, 139).

that operating a hotel and casino necessarily involves many persons and entities taking part in a

common undertaking or enterprise involving risk and potential profit."  *Id.* at *10 (quoting *Tyla*

*D. v. MGM Resorts Int'l*, No. 2:24-cv-00698-APG-BNW, 2024 WL 4839744 at *3 (D. Nev. Nov.

19, 2024)) (internal quotations omitted).

Plaintiff's claim that the defendants participated in the ventures of their sex tourist guests

is just its "commercial venture" claim in sheep's clothing.  Businesses market to specific audiences

to attract consumers and generate increased revenue.  Plaintiff alleges that many of the consumers

within the casino industry in Las Vegas are "sex tourists" that the defendant casinos have marketed

themselves.  (ECF No. 138 ¶ 66).

Given that the court liberally interprets what satisfies as participation in a venture, the court

finds that plaintiff has sufficiently pled this element.  *C.C. v. Rashid*, 2:23-cv-2956-GMN-BNW,

2024 U.S. Dist. LEXIS 231723, at *29 (D. Nev. Dec. 20, 2024).

### 3.  *Whether defendants knew or should have known the venture involved sex trafficking*

The final question is whether plaintiff has plausibly alleged that defendants knew or should

have known that the ventures violated the TVPRA.  Whether a participant in a venture knew or

should have known that the venture engaged in trafficking imposes a negligence standard.  *Ratha*

*v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022); *see also J.C. Choice Hotels, Int'l,*

*Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. 201073, at *11 (N.D. Cal. Oct. 28, 2020)

("[Plaintiff] need not allege that defendants had actual knowledge of her sex trafficking, [however]

she must allege facts to support that defendants, at the very least, rented rooms to people they

should have known were engaging in her sex trafficking.").

"[I]t is not enough to establish a defendant's knowledge of general commercial sex taking

place at its property to allege this prong."  *Catelyn H.*, 2025 U.S. Dist. LEXIS 57162, at *10

1  (quoting *C.C.*, 2024 WL 5200543, at *10) (cleaned up) (internal citations omitted).  Factual

2  allegations that are "just as consistent with non-sex trafficking activities, such as commercial sex

3  work generally. . ., as they are with sex trafficking," are not sufficient evidence of actual or

4  constructive knowledge.  *Doe (K.H.) v. R-Roof VI, LLC*, No. 23-cv-11422, 2025 WL 97620, 2025

5  U.S. Dist. LEXIS 7146, at *13 (E.D. Mich. Jan. 14, 2025).

6

7         Plaintiff's allegations, at most, establish that defendants should have known that plaintiff

8  was engaging in commercial sex activity.  *See Doe (K.H.)*, 2025 U.S. Dis. LEXIS 7156, at *6.

9  Plaintiff argues that long-time casino employees (and accordingly the defendant casinos) knew or

10 should have known that plaintiff was engaged in commercial sex activity.  (ECF No. 138 ¶¶ 130,

11 132–134, 153–159).

12

13        Plaintiff's theory that longtime workers would recognize her as a sex worker who had been

14 forced or coerced into the business is largely speculative.  *See* 18 U.S.C. § 1591(a).  Although she

15 states that she was visibly bruised when she walked the floors of the defendants' casinos, there are

16 no allegations that longtime casino workers saw her, or that she interacted with anyone apart from

17 specific instances mentioned below.  (ECF No. 138 ¶ 12).  Additionally, plaintiff's tattoo, which

18 she asserts is a visible brand, is not necessarily obvious as something other than a tattoo of a name;

19 she does not allege defendants' knowledge of it as a brand or the use of branding the complaint.

20

21        Likewise, plaintiff's claim that "sex-oriented" guests as well as security at the defendant

22 casinos knew she was a trafficking victim is based almost entirely on speculation.  (ECF No. 138,

23 ¶¶ 47, 153–159).  While citing "on information and belief," is permissible to some degree, by

24 excessively relying on guesswork and theory, plaintiff fails to nudge her claim across the line from

25 conceivable to plausible.  *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017).

26

27        Plaintiff attempts to use statistics on sex workers, coercion, arrest data, and guest reviews

28

as evidence of defendants' knowledge, but this generalized information does not support the contention that defendants knew or should have known of her trafficking.  (*See* ECF No. 138 ¶¶ 166–80, 191–93, 195–96); *e.g.*, *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 938 (D. Ore. 2020); *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020) (plaintiff's allegations were insufficient because they "do not show that defendants knew or should have known of sex trafficking *by the particular venture in which they allegedly participated*") (emphasis in original); *Red Roof Inns., Inc.*, 21 F.4th at 719 (requiring that "the undertaking or enterprise violate[] the TVPRA as to the plaintiff").

Plaintiff also asserts that bar staff at Planet Hollywood, the Mirage, and Treasure Island knew she was engaged in commercial sex activity.  (ECF No. 138 ¶¶ 135–37).  This is not enough to impute liability to the defendant casinos as knowing beneficiaries of plaintiff's sex trafficking. TVPRA claims usually involve a defendant either directly supporting a sex trafficker or forming a tacit agreement with the trafficker through a continuous business relationship.  *See Christina T.*, 2025 U.S. Dist. LEXIS 205896, at *9 n.2 (compiling cases).  Plaintiff alleges no such involvement by her trafficker.

Moreover, "[a]lthough 'participation in' a venture need not involve direct participation in sex trafficking, '[i]t is the venture that must violate Section 1591, and not the participant.'" *Tyla D.*, 2024 WL 4839744 at *4; *G.G.*, 76 F.4th at 559.  Plaintiff fails to allege how any defendant, including their employees, took specific actions to violate the TVPRA pursuant to the defendants' ventures as casinos.[3]  Accordingly, plaintiff cannot proceed with her TVPRA claim against

---

[3] While it might be plausible that the defendants failed to uncover or prevent plaintiff's trafficking, that is not grounds for liability under the TVPRA.  *A.B. v. Shilo Inn*, 2023 WL 8805685, at *5 (quoting *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021)); *see also Catelyn H.*, 2025 U.S. Dist. LEXIS 57162, at *11.

defendants on a beneficiary theory of liability.

C.  Perpetrator Liability

A "perpetrator" of sex trafficking can be either a direct violator under § 1591(a)(1) or a participant under § 1591(a)(2), but both require actual knowledge of the trafficking under § 1591(e)(4).  *Christina T.*, 2025 U.S. Dist. LEXIS 205896, at *13 (citing *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 766 (C.D. Cal. 2024) (internal citation omitted)).

Plaintiff contends the defendants are perpetrators within the meaning of 18 U.S.C. §1591(a)(1) because they "harbor[ed]," "maintain[ed]" and "provide[d]" plaintiff, and they did so "in reckless disregard of the fact" that coercion was used to induce plaintiff to participate.  (ECF No. 138 ¶ 210).  To state a claim for perpetrator liability under the TVPRA, a plaintiff must plead facts showing, among other things, that a defendant knowingly

> recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits ... a person ... knowing, or ... in reckless disregard of the fact, that means of force, threats of force, fraud, coercion ... or any combination of such means will be used to cause the person to engage in a commercial sex act.

18 U.S.C. § 1591(a).

As discussed above, plaintiff has not sufficiently pled facts to establish that defendants had actual knowledge.  Thus, because actual knowledge is required for a finding of perpetrator liability under § 1591(a), plaintiff has failed to adequately plead this claim.

. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .

1

2   **IV.     Conclusion**

3          Accordingly,

4
         IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motions to
5
6   dismiss (ECF Nos. 148–52) be, and the same hereby are, GRANTED with prejudice.

7          DATED November 13, 2025.

8

9          _____

10         UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28